## LESER v. McGRANERY, Atty. Gen. et al.

### Civ. No. 13153.

United States District Court,
E. D. New York.

May 29, 1953.

Samuel J. Loewenstein, New York City, for plaintiff.

Frank J. Parker, U. S. Atty., Brooklyn, N. Y., James D. Hill, Walter T. Nolte, and William P. Cochrane, Washington, D. C., for defendants, the Attorney General and Treasurer of United States.

Eugene T. O'Neill, New York City, for Equitable Life Assur. Soc.

GALSTON, District Judge.

This is a motion on behalf of defendants, McGranery and Clark, to dismiss the complaint, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

It is contended that the court has no jurisdiction over the defendant James P. McGranery, as Attorney General of the United States; that the court has no jurisdiction over the subject matter of the action, and that the complaint fails to state a claim upon which relief can be granted.

The complaint presents a claim on behalf of the beneficiary under three life and disability insurance policies issued by the defendant, Equitable Life Assurance Society, covering the life of Rudolph Leser. The plaintiff is a beneficiary named in all three policies.

It appears that Leser died on July 11, 1947, and the proceeds have not been paid either to the beneficiary or to the Attorney General of the United States as successor to the Alien Property Custodian. The Attorney General had, pursuant to vesting orders, on or about December 27, 1950, vested all title and interest in the policies.

On November 28, 1952 the plaintiff filed notices under oath, pursuant to section 9 (a) of the Trading with the Enemy Act, Title 50, U.S.C.A.Appendix, § 1 et seq. with the Attorney General as Successor to the Alien Property Custodian, by which the plaintiff claims an interest, right or title to all monies and property vested by the vesting orders. The complaint alleges that this action is commenced to establish the interest, right and title of the plaintiff in the aforesaid policies. There is also the allegation that the plaintiff is not an enemy or ally of an enemy within the meaning of the act of Congress referred to.

Certain facts also are alleged in the complaint which show that on or about the year 1936, and for about seven years prior thereto, plaintiff was domiciled in the United States, and was a resident of the City of New York. In the same year plaintiff and her husband, the insured, went to Germany to visit their parents. There the insured contracted a disease known as Addison's disease which rendered his return to the United States dangerous to life. The plaintiff remained in Germany with her husband, being unable to return because of the physical disability of the insured. She alleges that at all times, after her departure from the United States, she considered herself, and was, domiciled in the United States, and that immediately after the death of the insured she took all possible action to return to the United States, and did so return at the first available opportunity in June, 1951.

In effect what the plaintiff seeks is that her interest, right and title in each of the policies be established; that the Attorney General of the United States and the Treasurer of the United States assign to her all monies and property held by the Attorney General or the Treasurer respecting the policies in question; and that the Equitable Life Assurance Society pay the proceeds to which she is entitled to to the plaintiff.

At first impression it seems shocking that though Rudolph Leser died six years ago, his widow, the beneficiary, has not been able to acquire any of the proceeds of the three policies in suit. It would seem that

the time has been reached whereat she should have at least the opportunity to litigate her alleged rights. No answers have been interposed, but from the statement of facts set forth in the memorandum of the Equitable Life Assurance Society we learn that the Office of the Alien Property Custodian, in letters dated February 26, 1951, and two dated February 27, 1951, served the Equitable Life Assurance Society with certified copies of vesting orders Nos. 16838, 16779 and 16780; and that under the said vesting orders the Department of Justice claimed that title in respect to the three policies in suit vested with the Attorney General, and that he acquired the property, interest and right described in each of the said orders.

■ Actually, possession of the vested property is not a prerequisite under section 9(a) of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 1 et seq. It seems reasonably clear that under that section of the Act a claimant may sue to establish the right to any property that has been "seized" by the custodian. The plaintiff's position that the property which has been seized as against her is the contractual right of the plaintiff against the Equitable Life Assurance Society to her share of the proceeds of the policy, is entirely sound. The vesting orders constituted the seizure. How long is such a seizure to be? Is such a seizure, since it is not of a physical thing, as the Government contends, sufficient to bar the plaintiff from asserting her rights under the Act? That certainly is not the law, and it would be most illogical were it so. I see nothing in the section which compels the conclusion that physical possession by the custodian is a prerequisite to sue under section 9(a).

Wholly consistent with such a reading of section 9(a) is section 7(c), wherein it is said:

"The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered, or paid * * * to the Alien Property Custodian or required so to be * * * shall be that provided by the terms of this Act * * *".

In that section the use of the phrase "or required so to be" is consistent only with the inference that a remedy was afforded to a claimant even when the physical property had not been turned over to the Custodian.

■■ The Government argues that section 9(a) must be interpreted in the light of its function in giving consent of the Government to be sued, and that nothing therein permits joinder of a codefendant. Of course, there is no question that without a relinquishment of its sovereign immunity the Government could not be sued; but it does not follow from that fact that no other defendant may be joined in a suit for return of or possession of vested property. That which the Government has vested is a claim against its codefendant in this suit. There is no element of prejudice that results from making the codefendant a party to this action. The Government is not in the slightest degree foreclosed or prejudiced from asserting its defense against the plaintiff, and if it is successful in such defense, the plaintiff would have no over-riding right against the codefendant. Clearly in the interest of simplicity and avoidance of a multiplicity of suits, the Equitable Life Assurance Society, which holds the funds and wants to distribute the proceeds of the three policies in suit, is a proper party. There is nothing that I can see in any section of the Trading with the Enemy Act, nor in any of the cases cited by the Government, which enables the Government to bar the admitted holder of the proceeds of these policies as a proper party. This conclusion is particularly fortified by the statement made during the argument of the motion that it is the intention of the Government to bring action against the Equitable Life Assurance Society for the collection of the proceeds. Must beneficiaries sit idly by and await the termination of such litigation? Quite conceivably a statute of limitations might operate against their interests.

The motion to dismiss the complaint is accordingly denied.